SUNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 05-80200-CIV-RYSKAMP/VITUNAC

KAREN L. DYER,

    Plaintiff,

v.

PAXSON COMMUNICATION CORP.,

    Defendant.

_____/

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

THIS CAUSE comes before the Court pursuant to Defendant Paxson Communications Corp.'s ("Defendant") Motion for Summary Judgment, filed September 5, 2006 **[DE 40]**. Plaintiff Karen Dyer ("Plaintiff") responded on November 15, 2006 **[DE 53]**. Defendant replied on November 14, 2006 **[DE 52]**.[1]  The Court heard oral argument on this motion on November 17, 2006.  This matter is ripe for adjudication.

**I. BACKGROUND**

Plaintiff worked for Defendant from approximately September 1999 through August 2003. (Depo., 25; Udell Decl., 7.)  Defendant hired Plaintiff in September 1999 after she was laid off from her retail computer sales position at Comp USA. (Depo., 24.)  Plaintiff initially worked as an administrative assistant in the Internet Department. (Depo., 25, 199-200.)  The Internet Department was technically a separate corporate entity, but it operated as one of Defendant's divisions. (Depo., 26.)

---

[1] Plaintiff served her response on Defendant prior to filing it with the Court.

In approximately 2001, Karsten Amlie ("Amlie"), the head of the Internet Department and Plaintiff's supervisor, promoted Plaintiff from administrative assistant to Director of Online Business Development.  (Depo., 29.)  From September 1999 through July 2002, Plaintiff received at least three pay increases, which amounted to an approximate 25% increase in pay.  (Depo., 35-36, 123-24, 114.)

In the summer and fall of 2002, Defendant underwent a significant corporate re-organization and downsizing.  (Depo., 36; Udell Decl.)  Its Internet Department was eliminated, and the employees in the department were either laid off or transferred to other departments.  (Depo., 38.)  A transfer from the Internet Department into another department was not guaranteed.  (Depo., 56, 59; Udell Decl.)  Amlie, a white male aged 33 or 34 at the time, was terminated.  (Depo., 39.)

Nancy Udell ("Udell"), then the head of the Publicity/Advertising Department, approached and hired Plaintiff, thereby saving Plaintiff's employment with Defendant.  (Depo., 60, 59; Udell Decl.)  Plaintiff and Udell were friends as well as colleagues.  The two would have lunch together and discuss private/personal matters.  (Depo., 51.)  Plaintiff was 47 years old at the time.  (Depo., 64.)  Plaintiff's new position in the Publicity/Advertising Department was as a listing competitor/publicity coordinator.  (Depo., 60.)  Her base salary remained the same.  (Depo., 87.)  Her duties in her new position were different than her previous duties in the Internet Department.  (Depo., 64.)  For example, Plaintiff was no longer responsible for website revenue partnerships.  (Depo., 78.)  Previously, in the Internet Department, Plaintiff received a $500 quarterly bonus for working in the cable distribution department and a 15% commission for her work with Internet revenue partnerships.  (Depo., 76-77.)  In Plaintiff's new position, she did not

have any responsibility or role in partnership revenues or cable distribution and did not receive any bonus payments or commissions for those Internet-related activities. (Depo., 78-81.)

Two or three weeks after being hired into the Publicity/Advertising Department, Plaintiff informed Udell that she wanted to change positions. (Depo., 89, 297.) Specifically, Plaintiff said that she wanted to apply for the position of advertising director. (Depo., 88.) Udell told Plaintiff that she did not have the appropriate experience for the position of advertising director. (Depo., 91.) Another female applicant, Jennifer Hellman ("Hellman"), was selected for the position. (Depo., 90.) Plaintiff was unaware of Hellman's specific qualifications or professional background, but was aware that Hellman worked with the advertising agency Defendant used. (Depo., 90, 162.) Plaintiff admitted that the relationship between the agency's owner and Defendant's president was the primary basis for Defendant using the agency. (Depo., 163.)

In December 2002, Plaintiff wrote one or more e-mails to Udell to explain how she could be better used in the Publicity/Advertising Department. (Depo., 93-94.) In the same time period, Plaintiff also expressed her interest in the publicist position within the department. (Depo., 149.) Plaintiff did not formally apply for the position, however, realizing that she was not a qualified applicant. (Depo., 149-52.) Plaintiff perceived that Udell started treating her poorly in December of 2002 - January 2003 after her repeated expressions of interest in other positions in the department. (Depo., 93-94.)

During the spring of 2003, Plaintiff spoke with several other executives about working for them or helping them. (Depo., 297-99.) Specifically, Plaintiff sought out Steve Friedman, president of cable distribution, and offered "to do things in his department." (Depo., 298-300.) Such work was informal because Plaintiff actually reported to Udell. (Depo., 299.) Udell's

4

Department paid Plaintiff's salary, and Udell was not "comfortable" with Plaintiff's interest in another department. (Depo., 299.)

Also, within six weeks of Udell's hiring her, Plaintiff solicited and spoke with Seth Grossman, another executive, about helping his department. (Depo., 300.) Udell once saw Plaintiff sitting in Grossman's office, which Plaintiff perceived made Udell very unhappy. (Depo., 103-04.) Sometime between February and March of 2003, Udell stopped speaking to Plaintiff outside of business meetings. (Depo., 278, 304-05.)

Plaintiff made a written request to human resources in May of 2003, wanting a transfer out of Udell's Department. Plaintiff and Emma Cordoba ("Cordoba"), the head of human resources, exchanged numerous written communications over the next two month period. (Depo., 273-85.) Plaintiff alleges that at one point Cordoba verbally asked her, "Don't you realize how different you are from the rest of the department, Karen?" (Plaintiff's answer to Defendant's interrogatories, No. 10.) Plaintiff never mentioned age discrimination in her repeated written complaints to human resources. (Depo., 276; Ex. 5.)

Plaintiff points to only one comment regarding age discrimination. (Depo., 258-61.) Udell allegedly stated something along the lines of: "don't you hate those older senior executives who think they know so much." (Depo., 258.) Plaintiff then added that Udell may have referred to "older female executives." (Depo., 258.) Plaintiff admits that the conduct was not directed at her because she was not an older female executive. (Depo., 260-61.)

During her employment, Plaintiff sought permission to attend an executive MBA program at Duke University. (Depo., 11.) Defendant assisted Plaintiff in applying to the program. (Depo., 9.) Udell approved Plaintiff's request to be absent for three weeks to attend

classes.  (Depo., 11, 290.)  Udell did not deny any leave requests for Plaintiff after May of 2003. (Depo., 290.)

In August of 2003, Udell, along with other executives, terminated Plaintiff for poor performance in her coordinator position, including an inability to work with Udell, an inability to focus on her position and an inability to respect the chain of command within the advertising department.  (Udell Decl.)

Plaintiff's Complaint, brings claims of age discrimination, gender discrimination, hostile work environment, disparate treatment and retaliation.  Plaintiff makes oblique reference to any and all statutory violations of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*, Title VII, 42 U.S.C. § 2000e *et seq.*, and the Florida Civil Rights Act ("FCRA"), Fla. Stat. § 760.10 *et seq*.  Plaintiff seeks reinstatement, lost wages benefits and compensation, compensatory, double liquidated and punitive damages, attorney fees and costs, prejudgment interest and such other relief that the Court may deem just and proper.  Plaintiff's response indicates that Plaintiff has dropped all of her gender discrimination claims, thus, this order will address only age discrimination issues.

## II.  LEGAL STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed.R.Civ.P. 56(c).  The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file,

together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553 (1986) (quoting Fed. R. Civ. P. 56(c)). An issue is "material" if it is a legal element of the claim under applicable substantive law that may affect the resolution of the action. See Anderson v. Liberty Lobby, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510 (1986). An issue is "genuine" if the record, taken as a whole, could lead a rational trier of fact to find for the non-moving party. See id. The movant may meet this standard by presenting evidence demonstrating the absence of a dispute of material fact or by showing that the nonmoving party has not presented evidence in support of an element of its case on which it bears the burden of proof. Celotex, 477 U.S. at 322-23, 106 S.Ct. at 2552-53. The moving party need not supply "affidavits or other similar materials negating the opponent's claim." Id.

Once the moving party meets its burden, the nonmoving party must "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Id. at 324, 106 S.Ct. at 25 going to 53 (quoting Fed.R.Civ.P. 56(e)). Although the nonmovant need not present evidence that would be admissible at trial, it may not rest on his pleadings. Id. "[T]he plain language of rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. at 322; 106 S.Ct. at 2552. See also Graham v. State Farm Mut. Ins. Co., 193 F.3d 1274, 1281-82 (11th Cir. 1999).

The legal analysis for allegations of employment discrimination under Title VII, the

FCRA and the ADEA is the same.  See Florida State Univ. v. Sondel, 685 So. 2d, 923, 925 n.1 (Fla. 1st DCA 1996) (stating that federal cases interpreting the AEDA are also applicable to age discrimination claims under the FCRA).

For Plaintiff to prove a hostile work environment claim based on age, she must establish the following: (1) she belongs to a protected group; (2) she was subjected to unwelcome harassment; (3) the harassment complained of was based upon her age; (4) the harassment complained of was sufficiently severe or pervasive to alter the terms or conditions of employment and create a discriminatorily abusive work environment; and (5) the employer is liable for the environment under a theory of either direct or vicarious liability.  Miller v. Kenworth Dothan, Inc., 277 F.3d 1269, 1275 (11th Cir. 2002).

To establish a prima facie claim of disparate treatment in a promotion case, Plaintiff must show: (1) she belonged to a protected group; (2) she applied and was qualified for a job for which her employer was seeking applications;(3) despite her qualifications, she was rejected for the position; and (4) after she was rejected, her employer left the position open or filled it with a person who is not a member of Plaintiff's protected group.  Walker v. Mortham, 158 F.3d 1177, 1183-84 (11th Cir. 1998).  The Eleventh Circuit uses the framework established in McDonnell Douglas Corp v. Green, 411 U.S. 792 (1973) and Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248 (1981) for evaluating age discrimination claims based on circumstantial evidence.  See Early, 907 F.2d at 1081-83; see also Chapman v. A1 Transport, 229 F.3d 1012, 1024 (11th Cir. 2000).  Plaintiff concedes in her response that she bases her claim on circumstantial rather than direct evidence.

To survive a summary judgment motion, a plaintiff alleging age discrimination must raise

8

an inference of discrimination by presenting a prima facie case of discrimination. <u>Earley</u>, 907 F.2d at 1081 (citations omitted); <u>Chapman</u>, 229 F.3d at 1024 (citations omitted). To establish a prima facie case based on circumstantial evidence a plaintiff must prove that she (1) was a member of the protected age group, (2) was subjected to an adverse employment decision, (3) was qualified for the position, and (4) was replaced by a younger individual. <u>Chapman</u>, 229 F.3d at 1024.

If the plaintiff brings a prima facie case of discrimination, the burden shifts to the defendant to "articulate a legitimate, nondiscriminatory reason for the employment action." <u>Id.</u> (citations omitted); <u>see also Earley</u>, 907 F.2d at 1081 (citations omitted). If the defendant articulates a legitimate, nondiscriminatory reason for the action, the burden shifts to the plaintiff to "proffer sufficient evidence to create a genuine issue of material fact regarding whether each of the defendant employer's articulated reasons is pretextual." <u>Id.</u> at 1024-25 (citations omitted); <u>see also Earley</u>, 907 F.2d at 1081 (citations omitted). To survive summary judgment, the plaintiff's evidence must be "in the form of specific facts...mere conclusory allegations and assertions will not suffice." <u>Earley</u>, 907 F.2d at 1081 (citations omitted).

A plaintiff may establish a prima facie case for age discrimination in a termination case by showing (1) she was a member of a protected group of persons between the ages of 40 and 70, (2) she was subject to adverse employment action, (3) a substantially younger person filled the position for which she was discharged and (4) that she was qualified for the position. <u>Turlington v. Atlantic Gas & Light Co.</u>, 135 F.3d 1428, 1432 (11th Cir.), *cert*. *denied*, 119 S.Ct. 405

(1998).[2]

To prove a retaliation claim, a plaintiff must establish the following: (1) she engaged in statutorily protected activity, (2) an adverse employment action occurred, and (3) the adverse action was causally related to the plaintiff's protected activities. Little v. United Technologies, 103 F.3d 956, 959 (11th Cir. 1997).

### III.  DISCUSSION

**A.     Age Discrimination**

Plaintiff's allegations of age discrimination are as follows: (1) after Plaintiff commenced employment in Udell's department, Udell hired four new employees, all of whom were under 40 and two of whom had significantly higher salaries than Plaintiff despite their lesser experience and qualifications; (2) Plaintiff applied for the advertising director position, but Udell selected a younger, less experienced female applicant for the position, and (3) Plaintiff sought additional "responsibilities" and a different job title in Udell's department but was denied these opportunities.

Plaintiff's deposition testimony demonstrates the lack of evidentiary support for these claims.  Plaintiff acknowledges that she was hired at the age of 47 by Udell, an individual over the age of 40 herself, when her previous position was eliminated through downsizing.  The proposition that Udell's hiring Plaintiff is discriminatory is nonsensical.  Plaintiff was not

---

[2] Plaintiff requests that the Court apply the standard articulated in Rowell v. BellSouth Corp., 433 F.3d 794, 798 (11th Cir. 2005), which applies to discrimination claims in the context of workforce reductions.  Rowell requires a plaintiff to demonstrate that she was within the protected age group, that she was adversely affected, that she was qualified to assume another position at the time of her discharge, and that evidence exists from which a factfinder might reasonably conclude that the employer intended to discriminate.  The Court does not find Rowell controlling, as Plaintiff's employment actually survived the workforce downsizing.

"terminated" during the downsizing, rather, Udell actually sought Plaintiff out and saved her employment with Defendant.  Indeed, Plaintiff fared very well during the downsizing; her supervisor in the Internet Department, a white male a in his 30s, lost his job during the process.  The Complaint also alleges that Plaintiff's transfer to Udell's department was discriminatory because it resulted in a reduction in pay.  The only change in Plaintiff's pay was her incentive pay and her commission pay relating to certain Internet partnerships, however.  Plaintiff admits that she no longer had any duties in her new position tied her previous incentive pay.  In fact, Plaintiff even admits that the loss of these incentive payments was not discriminatory.

Finally, Plaintiff cannot identify a single legitimate comparator who was treated more favorably than she.  Although Plaintiff claims that her age was the reason she was not selected for the position of advertising director, Plaintiff admits that the individual hired for the position had a previous working relationship with the owner of Defendant's current advertising firm and that the relationship was the "primary" basis for Defendant's retaining the agency.  As for Udell hiring for new younger female employees, each held or was hired into different positions in the department.  One of these individuals was the individual hired for the previously discussed advertising director position.  The second was a publicist.  As noted, Plaintiff admitted that she lacked the experience for such a position and therefore did not apply for it.  Plaintiff further admitted that she did not know the nature of the publicist's background or how she was more qualified than that individual.  The remaining two individuals were hired at significantly lower salaries and compensation than Plaintiff, and Plaintiff did not apply for or wish to hold these positions.  That Plaintiff was required to train and/or mentor these employees is not evidence of age discrimination.

Plaintiff also refers to Defendant's Proposed Severance Agreements and Relief form provided at the time of her termination. Plaintiff fails to explain how this proffer is even admissible or appropriate. Defendant's offering such agreements constitutes no admission and simply reflects a decision to offer some value to avoid the risk of defending against potential meritless cases. Plaintiff's reference to her receipt of unemployment compensation benefits does not change the fact that Defendant's stated reason for her termination was her inability to work with Udell and her continued neglect of her assigned duties.

Plaintiff's claims fail both at the prima facie stage and the pretextual stage. Defendant has provided unambiguous explanations for any and all actions taken concerning Plaintiff. Plaintiff fails to rebut any of this evidence and simply asserts her own belief that Defendant's explanation is pretextual without explaining how or why.

**B.     Retaliation**

Plaintiff's retaliation claim is also lacking. Plaintiff alleges that after she complained to human resources in May of 2003, Defendant failed to take corrective action and, in fact, retaliated against her by: (1) more disparate treatment; (2) denying sick leave and vacation time; (3) reprimanding her for hours worked; and (4) terminating her in August 2003. Plaintiff provides no evidentiary support for these specious allegations, however. In fact, Plaintiff's own deposition tends to dispel these allegations. Plaintiff maintains that she and Udell were not getting along as of December 2002. According to Plaintiff, the acrimony resulted in their not speaking as of February 2003, long before any May 2003 "complaint" to human resources. Further, Plaintiff admitted that Udell did not deny her any leave or reduce her pay after she went to human resources. Plaintiff even admitted that Udell allowed her to leave for three weeks to

start an out-of-state MBA course in June of 2003.  Finally, Plaintiff did not at any time engage in protected activity, that is, complain to Udell or human resources that she was experiencing age discrimination.  The only potentially relevant disputed fact is the allegation that Cordoba told Plaintiff she was "different" from the rest of the department.  Assuming for the sake of argument that the statement is true, it says nothing about intentional discrimination or age.  The statement could as easily have referred to the fact that Plaintiff was the only person who was not speaking with Udell or who aspired to work for other executives.  Defendant maintains that Udell terminated Plaintiff because Plaintiff failed to perform her job duties and spent her time seeking other positions.  Plaintiff does not offer any record evidence to rebut this basis for her termination.  The undisputed evidence, including Plaintiff's own testimony, establishes that age had nothing to do with her termination.

## IV.  <u>CONCLUSION</u>

THE COURT having considered the parties' written and oral arguments, hereby

ORDERS AND ADJUDGES that Defendant's Motion for Summary Judgment, filed September 5, 2006 **[DE 40]**, is GRANTED.  Final judgment shall be entered by separate order.

DONE AND ORDERED at Chambers in West Palm Beach, Florida this 20th day of November, 2006.

Copies provided:                      <u>S/Kenneth L. Ryskamp</u>
all parties and counsel of record     KENNETH L. RYSKAMP
                                      UNITED STATES DISTRICT JUDGE